UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOB STAUFFER,<br><br>        Plaintiff,<br><br>    v.<br><br>ORPHEUS FLOW TECHNOLOGIES, LLC, et al.,<br><br>        Defendants. | Case No. 21-cv-00567-JD<br><br>**ORDER RE SECURITIES LAW JURY INSTRUCTION** |

At the pretrial conference in January 2025, the Court said that it would advise the parties whether proposed jury instructions would be given for plaintiff Stauffer's claim under the California Corporate Securities Law, Cal. Corp. Code § 25401.[1] Dkt. No. 84. The parties filed revised proposed jury instructions with arguments for and against the securities instructions. Dkt. No. 87 at 22-26. The instructions will not be given, and the claim is dismissed.

The reasons for this disposition are straightforward. The first amended complaint (FAC) alleges that Stauffer was "a co-founder of defendant Orpheus Flow Technologies LLC, who was promised equity in return for his work." Dkt. No. 19 ¶ 1. Stauffer's "job duties were far reaching and integral to the entire backbone of the business," and included marketing and communications work, directing designers, videographers, and contractors, brand development, and other functions. *Id.* ¶ 10. In exchange for working as "a co-founder and a top manager of Orpheus Flow," Stauffer was offered a compensation package consisting of "a significant portion of the equity of Orpheus Flow" and "monthly earned income." *Id.* ¶ 9; *see also id.* ¶ 39 (defendants offered "to pay Mr.

---

[1] The first amended complaint did not state the statutory basis of the securities claim, but in opposition to summary judgment Stauffer said it was Section 25401, which makes it unlawful to use false or misleading statements in connection with the offer, sale, or purchase of a security. Dkt. No. 42 at 9.

Stauffer not only a specified salary, but with equity interest in Orpheus Flow."). This "offer" is said to be the security for purposes of Section 25401 of the securities statute. *Id*. ¶¶ 41-43.

The problem for Stauffer is that his compensation package offer was manifestly not a security. Although the definition of a security in Section 25019 is "expansive," it "is not applied literally." *People v. Black*, 8 Cal. App. 5th 889, 900 (2017) (quoting *People v. Figueroa*, 41 Cal. 3d 714, 734 (1986)). The "critical question" in defining a security "is whether a transaction falls within the regulatory purpose of the law regardless of whether it involves an instrument which comes within the literal language of the definition." *Id*. (quoting *Figueroa*, 41 Cal. 3d at 735); *see also People v. Syde*, 37 Cal. 2d 765, 768 (1951) (whether instrument is a security depends on the facts of each case and the purpose of the statute).

The regulatory purpose of the California securities law is plain. "[T]he general purpose of the law is to protect the public against the imposition of unsubstantial, unlawful and fraudulent stock and investment schemes and the securities based thereon." *Syde*, 37 Cal. 2d at 768 (citation omitted). "Its main objective is the creation of a balanced regulatory scheme to cope with the problems of modern securities markets." *Black*, 8 Cal. App. 5th at 899 (internal quotation omitted).

Pay offers and compensation packages such as Stauffer's do not come within the scope of these concerns. "An agreement to render personal services for compensation cannot be considered a security, even though the sale of a beneficial interest in such an agreement may come within the statute." *Syde*, 37 Cal. 2d at 768; *see also People v. Jaques*, 137 Cal. App. 2d 823, 834 (1955) (if "investor" has "active participation" in formation of an enterprise, or enterprise's "operation is dependent for its success partly on the efforts of the particular investor," then "the Corporate Securities Law does not apply.").

That is the situation here. Stauffer alleges that he was offered equity and monthly pay in exchange for performing "far reaching and integral" job duties for defendants. Dkt. No. 19 ¶ 10. This agreement is a far cry from an instrument that embodies the "passive role of an investor only," which is the focus of the securities statute. *Syde*, 37 Cal. 2d at 769. The "risk capital" and "*Howey*" tests applied by California courts underscore this conclusion. The risk capital test

defines a security by whether it entails, among other factors, "an indiscriminate offering to the public" and "a passive position on the part of the investor" in an enterprise. *Black*, 8 Cal. App. 5th at 900 (quoting *Silver Hills Country Club v. Sobieski*, 55 Cal. 2d 811, 815 (1961)). The *Howey* test borrows from an eponymous United States Supreme Court decision to ask "whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others." *Id.* (quoting *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 301 (1946)). Stauffer's compensation agreement fails both tests by a wide margin.

Consequently, the jury will not be instructed on the securities claim. For the same reasons, it is dismissed from the case.

**IT IS SO ORDERED.**

Dated: February 27, 2025

JAMES DONATO
United States District Judge